# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITNEY M. M., | ) |
| Plaintiff, | ) |
| | ) CASE NO. 17-CV-301-JFJ |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Britney M. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

## I.     Standard of Review

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in

order to determine if the substantiality test has been met." *Id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and Relevant Portions of ALJ's Decision

Plaintiff, then a 28-year old female, applied for Title II and Title XVI benefits on December 2, 2013, alleging a disability onset date of June 1, 2010. R. 339-351. Plaintiff claimed she was unable to work due to "Schizo affective disorder, depression, bipolar, and Sciatic nerve pain in [her] leg." R. 366. Plaintiff's claims for benefits were denied initially on March 7, 2014, and on reconsideration on June 4, 2014. R. 123-148, 183-187; 149-178, 194-199. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held three hearings, the first on May 7, 2015 (R. 116-122), the second on August 6, 2015 (R. 90-115), and the third on March 30, 2016 (R. 36-89).[1] After receiving hearing testimony from a medical expert and a vocational expert at the August 6, 2015 and March 30, 2016 hearings, the ALJ issued a decision on April 25, 2016, finding that Plaintiff was not disabled because she was able to perform other work in significant numbers in the national economy. R. 10-35.

In making his decision, the ALJ found that Plaintiff had the severe impairments of "schizoaffective disorder, depression, bipolar disorder, degenerative disc disease, sciatic nerve

---

[1] The ALJ reset the first hearing because Plaintiff's record was incomplete and because Plaintiff recently retained an attorney. The second ALJ hearing proceeded with a vocational and medical expert and was again rescheduled to allow further objective mental status testing on Plaintiff and gathering further missing mental health records. The March 30, 2016 hearing was the final ALJ hearing.

pain in the leg and drug abuse in remission." R. 17.[2] The ALJ further found that none of Plaintiff's impairments met or combined to medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered the paragraph B criteria in evaluating Plaintiff's mental impairments to find that Plaintiff had mild limitation of activities of daily living and social functioning, and moderate limitation with regard to concentration, persistence, or pace, with no episodes of decompensation. R. 18. Before proceeding to step four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"):

> With respect to lifting, carrying, pushing, and pulling, she is limited to light and sedentary exertion work. With respect to walking or standing, she is limited to 2 hours (combined total) of an 8-hour workday, with regular work breaks. She is able to sit for 6 hours (combined total) of an 8-hour workday, with regular work breaks. She is able to climb ramps or stairs only occasionally, is able to bend, stoop, crouch, and crawl not more than occasionally and is unable to climb ropes, ladders, and scaffolds, or work in environments where she would have to be exposed to unprotected heights and dangerous moving machinery parts. She is unable to perform tasks requiring overhead reaching more than occasionally and is further unable to perform tasks requiring the use of foot pedals more than occasionally. *She is able to understand, remember, and carry out simple instructions in a work-related setting and is able to interact with co-workers under routine supervision. However, she is unable to interact with the general public more than occasionally, regardless of whether that interaction is in person or over a telephone.* She is afflicted with symptoms from a variety of sources to include intermittent pain and fatigue as well as mental impairments, all variously described, that are of sufficient severity so as to be noticeable to her at all times, yet is able to remain attentive and responsive and perform work assignments within the above-cited limitations.

R. 19 (emphasis added).

The ALJ summarized portions of Plaintiff's mental health treatment records with Counseling and Recovery Services of Oklahoma spanning visits from 2010 to 2015. R. 21-23. In

---

[2] Plaintiff alleges error only in the ALJ's treatment of her mental impairments and does not challenge the Commissioner's decision regarding her physical impairments. Plaintiff has therefore waived any argument regarding her physical impairments. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("We routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

3

discussing his opinion evidence, the ALJ then summarized a "Disability Determination Explanation" exhibit form in the record. The ALJ cited "DDS reviewing physicians," identified only by initials, and noted these reviewing physicians found Plaintiff capable of performing "light semi-skilled work with occasional stooping," with mental limitations to "simple (unskilled) work." R. 24. The ALJ stated he effectively adopted these reviewing physicians' opinions, "but [ ] added a few additional limitations based on claimant's hearing testimony" without elaboration. *Id.* The ALJ then summarized the Mental Residual Functional Capacity Assessment ("MRFCA") completed by Plaintiff's treating physician Christopher Blaisdell, D.O. R. 24-25.

In reaching his decision as to Plaintiff's mental functioning capacity, the ALJ gave "little weight" to and largely disregarded the opinion of Dr. Blaisdell, *see* R. 25, who had opined that Plaintiff could not "work on a regular and sustained basis" in light of her mental impairments, *see* R. 852. In rejecting Dr, Blaisdell's opinion, the ALJ stated that he gave the decision "little weight because it is inconsistent with claimant's reported daily activities and far overstates his [sic] limitations." R. 25. The ALJ then cited several "examples" from (1) Plaintiff's "Function Report – Adult," dated December 19, 2013, and (2) select portions of counseling notes from Plaintiff's treatment records at Counseling and Recovery Services, in support of his rejection of Dr. Blaisdell's opinion. R. 25-26.

Relying on testimony from the vocational expert, the ALJ then found that Plaintiff could not perform any of her past relevant work. R. 27. The ALJ determined that Plaintiff was 25 years old on her alleged onset date with a high school education, and transferability of skills was not material because the Medical-Vocational Rules supported a finding of "not disabled" whether or not she had transferable skills. *Id.* At step five, the ALJ found, again relying on vocational expert testimony, that Plaintiff was not disabled because she could perform "other work" that existed in

4

significant numbers, which included clerical mailer (DOT # 209.587-010), assembler (DOT # 726.685-066), and stuffer (DOT # 731.685-014). R. 28. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

### III.   Issues on Appeal

On appeal, Plaintiff raises two main points of error: (1) that the "[v]ocational [e]vidence is [i]ncompetent"; and (2) that the ALJ failed to properly evaluate the opinion of Dr. Blaisdell. ECF No. 14. The Court reverses the decision based on Plaintiff's second allegation of error regarding the ALJ's evaluation of Dr. Blaisdell's opinion.[3]

### IV.   Analysis

Plaintiff argues that (1) the ALJ erred because he did not give proper weight to Dr. Blaisdell's opinion; and (2) the ALJ failed to perform a proper treating physician analysis according to regulations. ECF No. 14 at 9. The Court reverses based on the second argument that the ALJ failed to perform a proper analysis.

#### A.   Standards Governing Treating Physician Opinions

"[I]n evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the opinion qualifies for "controlling weight." *Id.* If the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the administrative record," it must be given controlling weight. *Id.*; *see also* 20 C.F.R. §§

---

[3] The Court does not reach the first point of error because the vocational evidence discussed by Plaintiff "may be affected by the ALJ's treatment of the case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that court need not reach the merits of claims that "may be affected by the ALJ's treatment of the case on remand").

5

404.1527(c)(2), 416.927(c)(2). "[I]f the [treating physician's] opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

A finding at step one that the treating doctor's opinion is not entitled to controlling weight does not end the inquiry because the opinion is "still entitled to deference." *Krauser*, 638 F.3d at 1330-31 ("[A] deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry."). Therefore, an ALJ who does not afford a treating physician controlling weight must proceed to the second step of the analysis. *Id.* at 1330.

At the second step, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in [20 C.F.R. § 404.1527] for this particular purpose, for the weight assigned." *Id*. Those factors include:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). "Although the ALJ's decision need not include an explicit discussion of each factor, the record must reflect that the ALJ considered every factor in the weight calculation. *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (internal citation omitted). "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually

assigned to the opinion and the reasons for that weight." *Id.* at 719. If an ALJ does not complete this analysis, a remand is required. *Krauser*, 638 F.3d at 1330.

      B.      **Dr. Blaisdell's Opinion and Other Medical Opinions**

Dr. Blaisdell, a psychiatrist at Counseling & Recovery Services of Oklahoma, treated Plaintiff for schizoaffective disorder from at least December 8, 2011 to February 25, 2016. Initially, he treated her psychosis with injections of Risperdal Contra but subsequently switched to Invega pills in 2012 and then to Invega injections in 2014. On August 3, 2015, Dr. Blaisdell completed a MRFCA for Plaintiff, which lists her current diagnosis on Axis I as "295.7 schizoaffective." R. 849. Dr. Blaisdell opined that Plaintiff had extreme or marked limitations in several areas, which the ALJ listed in his decision. R. 24-25. Dr. Blaisdell concluded Plaintiff could not "work on a regular and sustained basis" in light of her mental impairment. R. 852. In the narrative explanation, Dr. Blaisdell explained that he reached this conclusion because Plaintiff suffers from "bouts of depression, poor motivation, low energy and poor concentration," although her psychotic symptoms "are currently controlled (given current life stressors)." R. 852. During the final hearing on March 30, 2016, the Vocational Expert testified that limitations supported by Dr. Blaisdell's MRFCA, had it been accepted, would preclude substantial gainful employment.

Larry Vaught, Ph.D., performed a consultative psychological examination on November 24, 2015. R. 931-935. After obtaining patient history, Dr. Vaught administered a Wechsler Memory Scale III test, a WAIS-III test, and a Halstead-Reitan Neuropsychological Battery Mental Status Examination and diagnosed Plaintiff with Cognitive Disorder, NOS (Mild) and Schizoaffective Disorder (by history). R. 935. He completed a Medical Source Statement of Ability to Do Work-Related Activities ("MSS") and concluded Plaintiff had moderate limitations in the ability to understand, remember and carry out complex instructions; the ability to make

7

judgments on complex work-related decisions; the ability to carry out complex instructions in general; the ability to interact appropriately with the public, co-workers, and supervisors; and the ability to respond appropriately to usual work situations and changes in work settings. R. 937-939. In support of his moderate assessments, Dr. Vaught opined that Plaintiff was "nervous in crowds. She is often fatigued, with reduced motivation, for example, she bathes irregularly." R. 938. Two different state agency medical consultants, identified in the record only by initials LML, Ph.D. and BTL, Ph.D., found Plaintiff had a severe Schizophrenia and other Psychotic Disorders and an Affective Disorder but found Plaintiff could perform simple tasks and some complex tasks. R. 128-130, 140-142, 162, 176.

> C. **ALJ Erred By Failing to Properly Perform Step Two of Treating Physician Analysis**

For purposes of this analysis, the Court assumes the ALJ could give Dr. Blaisdell's opinion less than controlling weight and does not reach whether the ALJ erred at step one. However, even assuming no error occurred at the first step, the Court concludes that the ALJ erred at step two because he "failed to satisfy [the Court] that all of the § 404.1527(d) factors were properly considered and that the apparent rationale for largely disregarding [Dr. Blaisdell's opinion] is sufficient." *See Andersen*, 319 F. App'x at 721–22.

After summarizing Dr. Blaisdell's mild, moderate, marked, and extreme mental work limitation opinions, the ALJ merely stated: "The undersigned has given Dr. Blaisdell's opinion little weight because it is inconsistent with claimant's reported daily activities and far overstates his [sic] limitations," R. 25, listing several examples of allegedly inconsistent behavior by Plaintiff. R. 25-26. Considering the ALJ's opinion overall, he did not conduct an adequate step-two treating physician analysis for several reasons.

8

First, the ALJ's decision does not reveal that he considered several relevant factors, including: (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) consistency between the opinion and the record as a whole, and (4) whether or not the physician is a specialist in the area upon which an opinion is rendered. This information "would not be insignificant here," given the length of the relationship and that Dr. Blaisdell completed his MRFCA close in time to the ALJ's decision. *See Andersen*, 319 F. App'x at 722 (noting that, while factors may not uniformly weigh in favor of treating physician's opinions, they would not be insignificant in that case).

Second, the ALJ failed to explain why he gave weight to the non-examining opinions of DDS physicians "LML, Ph.D. and BTL, Ph.D." over Dr. Blaisdell's opinion; he simply stated that he "finds the same [as the DDS physicians] but has added a few additional limitations based on claimant's hearing testimony." R. 24. This is not a sufficient explanation for his acceptance of those opinions over Dr. Blaisdell's. *See Anderson*, 319 F. App'x at 724 (ALJ's statement that he "concurred" with DDS physician's opinion not sufficient); *see generally Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir. 1988) (explaining that "opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant"). The ALJ also did not explain what weight he gave, if any, to Dr. Vaught's opinion.

Finally, assuming the ALJ addressed the third factor of "the degree to which the physician's opinion is supported by relevant evidence" by listing examples of activities from Plaintiff's counseling notes that do not support Dr. Blaisdell's MRFCA assessment, that is not a sufficient analysis. *See Andersen*, 319 F. App'x at 722 ("Although supportability might prove determinative,

that can only be decided after consideration of the other factors."). Further, the examples provided are not illustrative of the counseling notes as a whole and sometimes reflect only partial entries. Upon review of the examples cited as support for his finding of little weight, the ALJ selected and discussed only those portions of Plaintiff's counseling visits with Alicia Davis, an associate of Dr. Blaisdell's, that supported his finding. For example, the ALJ notes: "On March 28, 2013 claimant reported being in a very good mood. 'Client reports being excited about Easter and getting to see her in-laws as well as spend quality time with her son' (Exhibit 13F, page 4). Her goal for the day was to 'Pick up my son, get the stuff to dye eggs' (Exhibit 13F, page 4)." R. 25. This citation leaves out that Plaintiff also reported "being upset with her mother for leaving town with a man that she has only known for a short time" and "being angry with the situation" and being "very worried about her mother." R. 869. As another example, the ALJ cites: "In July of 2013, claimant traveled to Indiana for a family reunion and to see her father (Exhibit 13F, page 18)." But the ALJ failed to discuss prior visits in June, when Plaintiff presented to her appointments "shocked" and in "disbelief" after she learned of her father's cancer diagnosis. R. 878, 879. The ALJ further failed to discuss Plaintiff's stress over her father's cancer's rapid progression and family stressors due to the fact that he lived in Indiana. R. 880, 881, 882. These selective examples from counseling do not provide adequate reasons, tied to the relevant factors, for giving Dr. Blaisdell's opinion little weight. *See Watkins*, 350 F.3d at 1300 (ALJ must provide "good reasons" for weight assigned to treating physician's opinion); *see generally Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion only on the basis of contradictory medical evidence).

The ALJ's decision does not satisfy the Court that all of the § 404.1527(d) factors were properly considered, or that the ALJ's rationale for largely disregarding Dr. Blaisdell's opinion is sufficient. The matter is remanded for proceedings consistent with this Order.

IV. **Conclusion**

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. The ALJ should perform a proper treating physician analysis of Dr. Blaisdell's opinion. The ALJ may also revisit the vocational evidence as necessary based on his treating physician analysis.

**SO ORDERED** this 28th day of September, 2018.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**